## Cassidy's Estate

*Francis X. Quinn,* for accountant.
*F. Raymond Heuges,* for Commonwealth.

LADNER, J., November 30, 1945.—John James Cassidy died in Philadelphia February 17, 1941. There was probated a paper writing alleged to be a will, executed one week before his death, which bequeathed his entire estate after payment of debts and funeral expenses to his "cousin, Mae V. Schanz", whom he also appointed executrix.

Subsequently, the Secretary of Revenue of the Commonwealth, under the belief that the decedent left no next of kin or heirs to survive him, appointed an escheator who appealed from the probate of the will. In his petition sur appeal it is averred that the decedent at the time of the alleged will lacked testamentary capacity; also, that the writing was procured by undue influence, duress and constraint practiced upon decedent by the said Mae V. Schanz. It is also averred, inter alia, that decedent had been an inmate of the State Hospital for Mental Diseases at Byberry six days before execution of the alleged will, and that he had been taken from the State Hospital by the said Mae Schanz to her home.

Before the appeal from probate was heard Mae V. Schanz filed a petition to dismiss the appeal, averring that the escheator had no standing to appeal in that petitioner and her mother were of next of kin to decedent and prayed a preliminary determination of that question. The escheator filed an answer denying the kinship of the petitioner and her mother, to which issue was joined by replication. The issue thus raised was referred to Thomas Z. Minehart, Esq., as master.

The master concluded that the admissible testimony was not sufficient to establish the kinship claimed and filed his report recommending that the petition be dismissed. To his report and recommendation five exceptions were filed, which the master considered in a supplemental report and found to be without merit. These exceptions are now before us.

The first exception raises the question whether the master erred in ruling that the sole issue, to be determined by him was whether Mae V. Schanz was related to, or is an heir-at-law of the decedent, John James Cassidy. Exceptant does not argue this exception in his brief but we have nevertheless considered whether the master should have gone further and ascertained if there were, in fact, any other kin. We conclude that the master did not err for the all-sufficient reason that the order appointing him in express terms limits the purpose of his appointment "to take testimony as to the alleged relationship of Mae V. Schanz to John James Cassidy, decedent". Nor do we think this limitation of the scope of appointment was improvident. Now is not the time to settle the question whether the Commonwealth is entitled as against possible next of kin who have not so far appeared. By section 24 of the Intestate Act of June 7, 1917, P. L. 429, 20 PS §137, the Commonwealth is, in a sense, the most remote heir of any person domiciled in this Commonwealth who dies intestate and without kin or spouse. The Commonwealth therefore is, prima facie, entitled and the burden is upon those who claim kinship to prove their claims. "To defeat the claim of the Commonwealth the evidence must be so clear, precise and definite in quality and quantity as to satisfy the court below that the relationship claimed existed.": Link's Estate, No. 1, 319 Pa. 513, at p. 522.

No other claimants having appeared, it follows that if Mae V. Schanz and her mother fail to prove relationship, the escheator of the Commonwealth has a standing to contest the alleged will. If it is established that decedent's will was valid, then no person, whether kin or not, other than the beneficiary named, has any interest. If, on the other hand, the will is set aside, then, following our usual practice the administrator will report to the auditing judge, at the audit of his account, what efforts he made to ascertain the exist-

ence of next of kin, and all persons claiming any interest will have notice and ample opportunity to then appear and be heard before the court declares an escheat. The first exception is dismissed.

The second exception raises the question whether the master erred in ruling that none of the testimony of Mrs. Anna Brown, petitioner's mother, Mrs. Mae V. Schanz's sister, Mr. Bernard Brennan and James Brennan, witnesses, was admissible. The question before the master was whether the petitioner, Mae V. Schanz, was of next of kin to decedent. No family records, birth records or documentary evidence of any kind were presented to the master. Anna Brown, petitioner's mother, and the petitioner sought to establish the relationship by declarations not of the decedent but of other members of the family who, they claim, were related to decedent. The testimony was taken subject to objection. In subsequently rejecting the testimony as inadmissible, the master followed the rule as laid down in Sitler et al. v. Gehr, 105 Pa. 577, reaffirmed in Link's Estate, 319 Pa. 513, which is that declarations of deceased persons with reference to pedigree cannot be admitted unless they meet the test of three qualifications, (1) that the statements must be made ante litem motam; (2) that the declarant must be dead; (3) that it must be shown by some evidence, independent of the statement or declaration itself, that the person making the statement is related to the family about which he speaks. The master stated that, while the first two qualifications were complied with, there was a failure to meet the important condition of proof aliunde that the declarants were members of the decedent's family. In this regard the master's conclusion was undoubtedly correct.

However, we are all of the opinion that error was made in rejecting the testimony of the two Brennans. These witnesses testified to declarations made by the decedent himself. In substance these witnesses, who

were friends of the decedent of 20 years standing, testified to statements by him that Mae Schanz and her mother were his cousins. No case has been cited to us in Pennsylvania nor have we found any which applies the pedigree rule of the Sitler v. Gehr and the Link cases to testimony of declarations *by the decedent himself*, whose estate is before the court; but even in the absence of a precedent we have no difficulty in coming to the conclusion that the strict rule above mentioned should not be applied to declarations of the decedent himself. Surely a decedent knows who his relatives are, and if his declarations on that subject are not the best evidence, they are certainly admissible evidence to establish the fact insofar as it concerns his own property. In Rooney's Estate, 338 Pa. 268 (1940), the opinion writer admitted testimony of declarations made by decedent to intimate friends that he had no living relatives and our Supreme Court affirmed the finding of this court based in part on that testimony. This is the converse of the proposition before us now, but logic would seem to make it a precedent here.

While the precise question seems not to have arisen in this jurisdiction, we are not without authority in other jurisdictions. In the following cases the courts have held that a person could prove he was next of kin of a decedent by testimony of declarations to that effect by the decedent in his lifetime: Malone v. Adams, 113 Georgia 791; Wise et al. v. Wynn, 59 Miss. 588. In Wigmore's Supplement to his Second Edition on "Evidence", he adds to his Note no. 2, in §1491, in which he discusses our Pennsylvania case of Sitler et al. v. Gehr, 105 Pa. 577, the following:

"But of course the deceased declarant's statements about his own age, birth, etc., are admissible under the present rule," citing cases, and then adds, "This is assumed in the English cases settling the rule" and also notes in the same section the following: "Where the declarant is the intestate himself, his declarations may

be received as admissions of a predecessor in title and the present question need not arise," citing Malone v. Adams, 113 Georgia, 791, supra.

We rule, therefore, that the master erred in rejecting the testimony of the two Brennans that the decedent here (John James Cassidy) declared to them on different occasions that petitioner and her mother were his cousins.

While we sustain the second exception to this extent, we do not feel called upon to say that the testimony rejected definitely establishes the relationship claimed by petitioner because the question of credibility will depend upon the appearance, the frankness, the clearness of recollection and etc. of these witnesses. We therefore refer the report back to the master who had the advantage of seeing and hearing these witnesses testify, in order to enable him to pass on the credibility of this testimony and reconsider his recommendation accordingly.

The third exception charges error on part of the master in giving no weight to the record of our court of the Estate of Anna Murphy Roche, no. 2590 of 1931. This record was offered in an attempt to prove the relationship to the decedent of the declarants whose statements petitioner and her mother had testified to. However, the master asked petitioner's counsel whether the record indicated in any way that Anna Murphy Roche was the maternal or paternal aunt of the decedent here. Upon counsel answering such facts did not appear in the record, the master ruled that "in order for petitioner and her mother to claim relationship through Anna Murphy Roche, the line of blood relationship would have to be more clearly defined, otherwise, it was hearsay evidence and subject to the objection that there was no evidence outside the declarations to support it." We find no error in this ruling and the third exception must be dismissed.

The first and third exceptions are dismissed. The second is sustained to the extent indicated; the fourth and fifth exceptions are dismissed pro forma and the record referred back to the master for further consideration or rehearing if he deems the latter necessary.